PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1122

_____

HOME DEPOT USA, INC.,
                                        Appellant

v.

LAFARGE NORTH AMERICA, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-18-cv-05305)
District Judge: Honorable Michael M. Baylson

_____

Argued: October 3, 2022

Before:  CHAGARES, *Chief Judge*, SHWARTZ, and
SCIRICA, *Circuit Judges*.

(Filed: February 2, 2023)

Peter E. Davis
Roman Martinez [ARGUED]
Latham & Watkins
555 11th Street, NW
Suite 1000
Washington, DC 20004

Ronan P. Doherty
Frank M. Lowrey, IV
Bondurant Mixson & Elmore
1201 West Peachtree Street, N.W.
3900 One Atlantic Center
Atlanta, GA 30309

Lindsay S. Johnson
George P. Watson
Bryan Cave Leighton Paisner
1201 West Peachtree Street, N.W.
One Atlantic Center, 14th Floor
Atlanta, GA 30309

   *Counsel for Appellant*

Edward Dumoulin
Betsy Farrington
Jennifer L. Greenblatt [ARGUED]
Tarek Ismail
Goldman Ismail Tomaselli Brennan & Baum
200 South Wacker Drive
22nd Floor
Chicago, IL 60606

   *Counsel for Appellee*

—————————

OPINION OF THE COURT

—————————


**SCIRICA**, *Circuit Judge*

In this interlocutory appeal, we are asked to decide how the doctrines of law of the case and issue preclusion apply to a particular dispute in this multidistrict litigation proceeding (MDL).[1] Our answer is that those doctrines generally apply to each case in this MDL in the same way as they apply to cases outside of it. Because the District Court's decision was not consistent with that principle, we will vacate and remand.

This case involves allegations of a conspiracy to fix prices in the drywall industry. The District Court relied on issue preclusion and law of the case to exclude substantial portions of the testimony of Plaintiff Home Depot's expert, Dr. Robert Kneuper. As part of Home Depot's case against

—————————

[1] The question has been certified to us for review under 28 U.S.C. § 1292(b). As phrased by the trial court, the question is "whether a tag-along party's expert may ignore prior rulings that were issued by the MDL transferee judge before the tag-along party joined [the] MDL." *Home Depot U.S.A., Inc. v. Lafarge N. Am. Inc.*, No. 2:18-cv-5305, 2021 WL 5177742, at *3 (E.D. Pa. Nov. 8, 2021). Home Depot instead phrases the question as "whether prior MDL rulings to which Home Depot was not [a] party bind Home Depot in this separate lawsuit." No. 21-8049, ECF No. 14 at 9. The precise framing of the question makes no difference to our disposition.

3

Defendant Lafarge, Dr. Kneuper opined that the conduct of several firms in the drywall industry, including Lafarge, was consistent with illegal price fixing. The same conduct was at issue in a class action brought by direct purchasers of drywall as part of an MDL before the same court. Home Depot's later-filed case was consolidated with this MDL over its objection.

The Court found that large portions of Dr. Kneuper's testimony were "fundamentally improper" because they were "contrary to fundamental events" that had occurred in the MDL before Home Depot filed its case. *Home Depot U.S.A., Inc. v. Lafarge N. Am. Inc.*, No. 2:18-cv-5305, 2021 WL 3728912, at *15 (E.D. Pa. Aug. 20, 2021). Specifically, the Court faulted Dr. Kneuper for failing to conform his testimony to three such "events": (1) the Court's prior grant of summary judgment to one of the alleged conspirators, CertainTeed, (2) the fact that another supplier, Georgia-Pacific, had not previously been sued, and (3) the fact that alleged conspirator USG settled very early in the class action case. *Id.* at *14.

The District Court said that Home Depot was "bound by the[se] underlying events" under the doctrines of issue preclusion and law of the case. *Id.* At *15. We believe that was error. Issue preclusion applies only to matters which were actually litigated and decided between the parties or their privies. But Home Depot was not a party (or privy) to any of the relevant events, and two of the three events to which it was "bound" were not judicial decisions. Similarly, the law of the case doctrine applies only to prior decisions made in the same case. But Home Depot's case is not the same as the one in which the decisions were made, and as noted two of the three events were not decisions. On the facts here, the application of

4

these doctrines was improper. We will vacate the District Court's decision and remand for reconsideration.[2]

## I.

This case arises out of the decade-old domestic drywall MDL. In 2012 and 2013, direct purchasers of drywall—not including Home Depot—sued multiple drywall suppliers for conspiring to fix prices. *In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 180-82 (E.D. Pa. 2016). Those cases were centralized in an MDL before Judge Baylson in the Eastern District of Pennsylvania. *In re Domestic Drywall Antitrust Litig.*, 939 F. Supp. 2d 1371 (J.P.M.L. 2013). In June 2013, the purchasers filed a consolidated class complaint against the drywall supplier defendants. *Domestic Drywall*, 163 F. Supp. 3d at 181-83. Home Depot was a member of that putative class but was not a named plaintiff. Named as defendants were seven of the industry's leading firms: USG, TIN, CertainTeed, Lafarge, National, American, and PABCO. *Id.* at 181-82. Another supplier, Georgia-Pacific, was not sued.

Before any class-certification or dispositive motions were filed, Plaintiffs reached a settlement with defendants USG and TIN. The terms of the settlement preserved participating class members' rights to sue non-settling defendants. In 2015, the District Court preliminarily certified two settlement classes. Home Depot did not opt out. Following

---

[2] Home Depot has asked us either to "reverse the order excluding Dr. Kneuper's testimony" or to vacate it and remand "for the court to clarify whether Dr. Kneuper's reports need to be revised" for other reasons. Reply Br. 25. We choose the latter course for the reasons explained in Part III.

5

final approval of the USG and TIN settlements in August 2015, the Court granted summary judgment to defendant CertainTeed. *Domestic Drywall*, 163 F. Supp. 3d at 255, 260. The Court denied summary judgment as to the remaining defendants: American, National, Lafarge, and PABCO. *Id.* at 260.

In 2016, the named plaintiffs settled with Lafarge. The Court certified a new settlement class, but Home Depot opted out. A final judgment followed, to which Home Depot was not bound.

The class action then continued against the three remaining defendants—National, American, and PABCO. In August 2017, the Court certified a litigation class of drywall direct purchasers. *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 194, 235 (E.D. Pa. 2017). Before notice could be given to the class, however, the three remaining defendants agreed to settle. The Court certified a new settlement class with terms similar to the USG/TIN settlement—i.e., one which preserved the right of class members to pursue claims against alleged co-conspirators other than the settling defendants. This time, Home Depot elected to remain in the settlement class.[3] The Court entered final judgment on July 17, 2018, ending the class action.

In June 2018, Home Depot, acting alone, sued Lafarge in the Northern District of Georgia. Home Depot never bought

---

[3] In total, direct purchaser class members received nearly $170 million in settlements—$125 million from National, American, and PABCO, $39.25 million from USG, and $5.25 million from TIN.

drywall from Lafarge, but argued that antitrust law made Lafarge liable for the overcharges Home Depot paid its own suppliers. The Judicial Panel on Multidistrict Litigation transferred the suit to Judge Baylson over Home Depot's objection.

At the close of discovery, Home Depot produced expert reports from Dr. Robert Kneuper in which he opined that the pricing behaviors of Lafarge and other drywall suppliers, including USG, CertainTeed, and Georgia-Pacific, were indicative of a conspiracy to fix prices.

Lafarge then moved to exclude Dr. Kneuper's testimony under Rule 702 of the Federal Rules of Evidence[4] and moved for summary judgment. The Court requested supplemental briefing to address whether the prior MDL proceedings bound Home Depot under the doctrines of issue

---

[4] Rule 702 provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

preclusion or law of the case. In August 2021, the Court struck Dr. Kneuper's report and ordered him to submit a new one. *Home Depot*, 2021 WL 3728912, at *19. In the Court's opinion, it described the "issue presented" as whether Home Depot "can present opinions by an economist that [i]gnore relevant facts and prior decisions in the same case" and that "ignore the benefits Home Depot received as a member of a settlement class." *Id.* at *1. The Court struck the expert report for two reasons: first, because Dr. Kneuper's opinions "cross the line from economist to attorney-juror-judge," and second, "because they lack a fundamental acknowledgement of the unique and important procedural history . . . that binds Home Depot as a member of the direct purchaser settlement class, and contradicts [Kneuper's] conclusions." *Id.* at *12.

The Court did not extensively discuss the first reason, but it appears from the Court's discussion of the facts that it objected to Dr. Kneuper's "implications that Georgia-Pacific and CertainTeed were conspirators," *id.*, which it thought gave a "false impression of the drywall industry," *id.*, and went "far beyond what prior experts in this case have written and what this Court has held," *id.* at *10.

The second reason was discussed in more detail. The Court noted that it "must be careful to respect Home Depot's constitutional right to have its own claims, and proceed to a jury trial, against Lafarge." *Id.* at *13. But what it found "most important" was that Home Depot had "conveniently forgotten this case's history." *Id.* The Court refused to "countenance" what it viewed as Home Depot's "strategy" of "ignor[ing] the many rulings that this Court has made over the prior ten years of this litigation." *Id.* at *14.

8

In particular, the Court found three aspects of Dr. Kneuper's testimony "fundamentally improper." *Id.* First, the Court thought that "Dr. Kneuper's conclusions about Georgia-Pacific must be excluded" because "[n]o party has ever litigated against Georgia-Pacific" and "it was not part of the MDL." *Id.* Second, the Court found that Home Depot "waived any right to make any claim" that CertainTeed's conduct was "consistent with the economics of collusion." *Id.* This was because Home Depot did not take new discovery from CertainTeed, and because "relying on discovery about CertainTeed would have run contrary to this Court's conclusion that CertainTeed was entitled to summary judgment. . . ." *Id.* Third, the Court prohibited Dr. Kneuper from expressing opinions about USG. "Because USG . . . settled very early in the class action case," the Court explained, "this Court had no occasion to conclude anything about their role in the alleged conspiracy . . . ." *Id.*

Home Depot asked the Court to clarify its opinion, which it declined to do, and then moved for interlocutory review under 28 U.S.C. § 1292(b). Lafarge opposed certification, accusing Home Depot of "pretending that issue preclusion and law of the case were, by themselves, dispositive of the Court's Rule 702 decision," and arguing that the Court's decision was based "on a variety of valid reasons." Response in Opposition to Home Depot's Motion for Certification at 1, *Home Depot U.S.A., Inc. v. Lafarge N. Am., Inc.*, No. 2:18-cv-5305 (E.D. Pa. 2021), ECF No. 143. The Court rejected this characterization. In granting § 1292(b) certification for appeal, it confirmed that it "relied on principles of 'issue preclusion' and 'law of the case,'" *Home Depot*, 2021 WL 5177742, at *2, explained that "Home Depot [was] bound by rulings issued in this MDL before Home Depot joined it," *id.*, and indicated that

9

those issues would "directly affect the trajectory of this case," *id.* We granted leave to appeal over Lafarge's objection.

## II.

The District Court had original jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1292(b) as a result of the District Court's certification and our grant of leave to appeal.

"We review a district court's decision to exclude expert testimony for abuse of discretion." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 (3d Cir. 2012). We review questions of law—including the application of issue preclusion and law of the case—de novo. *In re Zoloft (Sertraline Hydrocholoride) Prods. Liab. Litig.*, 858 F.3d 787, 792 n.22 (3d Cir. 2017). A district court "abuses its discretion when it makes an error of law." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 n.9 (3d Cir. 2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

## III.

### A.

The District Court "rel[ied] on the law of the case doctrine" in excluding Dr. Kneuper's testimony. *Home Depot*, 2021 WL 3728912, at *16. It held that this doctrine bound Home Depot to the three events already mentioned: the grant of summary judgment to CertainTeed, the lack of summary judgment as to USG, and the fact that Georgia-Pacific was not sued. *Id.* at *14. We will vacate and remand.

10

The law of the case doctrine "prevents reconsideration of legal issues already decided in earlier stages of a case." *Bedrosian v. IRS*, 42 F.4th 174, 181 (3d Cir. 2022). The doctrine "only applies within the same case," *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010), and affects only issues that were "expressly" or "necessarily resolved" by prior decisions in the same case, *PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 881 n.10 (3d Cir. 2020).

The law of the case doctrine cannot be applied across distinct actions in this multidistrict proceeding. Cases centralized in an MDL "retain their separate identities" unless they choose to proceed on a consolidated "master" complaint. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 & n.3 (2015). "That means a district court's decision whether to grant a motion . . . in an individual case depends on the record in that case and not others." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020).

The law of the case doctrine cannot bind Home Depot to decisions in the direct purchaser class action because Home Depot's case and the class action are different cases. All of the binding "events" in the class action occurred before Home Depot filed this lawsuit on June 11, 2018. The cases proceeded on different complaints. And, as already noted, the different cases brought together in an MDL remain separate. *Gelboim*, 574 U.S. at 413; *see, e.g.*, *In re Interest Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698, 703 (S.D.N.Y. 2018) ("Although [plaintiff's] complaint has been consolidated with these earlier cases for pretrial supervision in this MDL, it is formally a separate case. The law of the case doctrine thus does not apply

11

here."). Therefore, law of the case cannot bind Home Depot to decisions in the prior direct purchaser class action.

Moreover, the doctrine does not apply because "[l]aw of the case only extends to issues that were actually decided in prior proceedings." *Farina*, 625 F.3d at 117 n.21 (citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478, at 649 (2d ed. 2002)). But two of the events relied on by the Court—the absence of a summary judgment ruling as to USG and lack of a suit against Georgia-Pacific—were not decisions. Not having been "actually decided," law of the case cannot reach these events. *Id.*

The Court appeared to believe that the MDL procedure created an exception to usual law of the case rules. It quoted approvingly from a district court's opinion in *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F. Supp. 381, 383 (E.D. Pa. 1970), where that court concluded without much analysis that the doctrine could be applied across different cases in the same multidistrict proceeding. Whatever the merits of this opinion in 1970, it is not applicable after *Gelboim*. As discussed above, separate cases brought together for pretrial proceedings "retain their separate identities." *Gelboim*, 574 U.S. at 413. The MDL process "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (quoting *Johnson v. Manhattan R.R. Co.*, 289 U.S. 479, 496-97 (1933)). And neither MDL centralization nor any other procedural device can "impose the heavy toll of a diminution of any party's rights." *Bradgate Assocs., Inc. v. Fellows, Read & Assocs.*, 999 F.2d 745, 750 (3d Cir. 1993).

12

The District Court said that the fact that Home Depot "benefited from the direct purchaser settlement" in the class action allowed it "to rely on the law of the case doctrine." *Home Depot*, 2021 WL 3728912, at \*16. But any benefit that Home Depot received did not make the two actions part of the same case, and so this cannot justify the Court's decision.

The Court also said that law of the case applied because "Home Depot did litigate and argue—extensively—to this Court during the prior MDL proceedings." *Id.* The parties appear to agree that this was not accurate. *See* Home Depot Br. 39; JA188 (Lafarge's statement that "Home Depot is not a party to the MDL and has limited knowledge about what discovery has already been conducted in the MDL"). Regardless, Home Depot's participation in the earlier class action would not have made this case the same as that one. So this too does not support application of law of the case.

B.

The District Court held that issue preclusion "applies to Home Depot in this case" and bars the admission of Dr. Kneuper's testimony. *Home Depot*, 2021 WL 3728912, at \*15. Issue preclusion bars a party from relitigating an issue when "the identical issue was decided in a prior adjudication," "there was a final judgment on the merits," "the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication," and "the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *In re Bestwall LLC*, 47 F.4th 233, 243 (3d Cir. 2022) (quoting *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016)); *accord Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63

13

F.3d 1227, 1231-32 (3d Cir. 1995). Each "event" to which the Court purported to bind Home Depot fails these requirements.

We first consider the Court's grant of summary judgment to CertainTeed in February 2016. As noted, preclusion "binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011). Home Depot was not a party in February 2016. At that time, Home Depot's only relationship to the litigation was as an absent member of a putative class. "It is axiomatic that an unnamed class member is not 'a party to the class-action litigation before the class is certified.'" *N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d 482, 492 (3d Cir. 2019) (quoting *Smith*, 564 U.S. at 313). Nor was Home Depot in privity with any party.[5] *See Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (describing the types of privies, including "preceding and succeeding owners of property," members of a certified class, and those who litigate "through a proxy"); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4448, at 313-17 (3d ed. 2017) (similar). Home Depot cannot be bound by those doctrines here.

---

[5] The use of the term "privity" has been known to cause confusion, and in its loosest forms "simply expresses a conclusion that preclusion is proper." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4449, at 337 (3d ed. 2017). We use the term in the stricter sense to refer only to the "substantive legal relationships justifying preclusion" under the Supreme Court's decision in *Taylor v. Sturgell*, 553 U.S. 880, 894 & n.8 (2008).

Given that Home Depot was not a party to the summary judgment proceeding, it is unsurprising that it also lacked the "full and fair opportunity to litigate" the issue. *See Taylor*, 553 U.S. at 892-93. As such, preclusion would be contrary to "our deep-rooted historic tradition that everyone should have his own day in court." *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996).

The other "events"—the absence of a summary judgment decision as to USG, and the fact that no party sued Georgia-Pacific—are not proper subjects of preclusion either. Home Depot was not a party to these events, and so preclusion is inappropriate for that reason alone. Moreover, these events were not decisions and so could not have been actually litigated and decided. Since "issue preclusion attaches only 'when an issue . . . is actually litigated,'" it is not appropriate here. *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27 (1982)).

The Court appeared to believe that a departure from these principles was warranted because Home Depot, as a class member, benefited from settlements with the other defendants in the class action. *Home Depot*, 2021 WL 3728912, at *15 ("Home Depot cannot retain an expert who presents opinions contrary to fundamental events that took place while Home Depot was a member of the settlement class . . . and benefitted from that settlement."). But these settlements did not have that effect. The settlements produced final judgments, but the ruling as to CertainTeed was not actually litigated and decided as part of those settlements, and so can have no issue preclusive effect. *See Burlington*, 63 F.3d at 1231-32. Settlements "ordinarily occasion no issue preclusion," unless the parties clearly "intend their agreement to have such an effect."

15

*Arizona*, 530 U.S. at 414. There is no evidence these parties intended that effect. In fact, these settlements preserve class members' rights to pursue claims against others.

The District Court's concern with Home Depot "having taken its money and ignored the [prior] rulings of the Court," *Home Depot*, 2021 WL 3728912, at *13, is understandable. But the necessary effect of making important rulings (like those on summary judgment) before certification is that "the decision will bind only the named parties." 7AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure §1785, at 384 (3d ed. 2005); *see also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 758-62 (3d Cir. 1974). The district court has broad authority to structure and manage the MDL proceeding to promote efficiency and avoid unfairness. But it does "not have the authority to create special rules" to "bind plaintiffs by the finding of previous proceedings in which they were not parties, even by a proceeding as thorough as the multidistrict common issues trial." *TMI*, 193 F.3d at 726 (quoting *DeLuca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 952 (3d Cir. 1990)).

C.

Lafarge does not seriously dispute any of the above analysis. Instead, it urges us to affirm on alternative grounds—that Kneuper's opinions give improper "legal conclusions," Lafarge Br. 3, and that the Court "independently rejected Kneuper's opinions because he failed to present evidence supporting them," *id.* at 4 (emphasis omitted). But affirmance on these grounds would not be justified by the record in this case, which makes clear that the trial judge "relied extensively" on the doctrines of law of the case and issue preclusion in

16

excluding Kneuper's testimony. *See Home Depot*, 2021 WL 5177742, at \*2.

It is possible that Dr. Kneuper's testimony is not admissible for other reasons, including some of those given in the District Court's opinion. Because we are a court of review, not first view, *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 900 (3d Cir. 2022), we decline to weigh in on factual determinations better left to the District Court, *Miller v. Bolger*, 802 F.2d 660, 666-67 (3d Cir. 1986), and leave them to its sound discretion on remand.

On remand, the Court should consider the admissibility of Dr. Kneuper's testimony afresh, unencumbered by reliance on the doctrines of law of the case and issue preclusion. The decision should instead be shaped by the traditional evidentiary principles governing the admissibility of expert testimony— "qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). In considering the parties' pending motions for summary judgment, the Court need not blind itself to its prior decisions. But the Court may only apply its prior reasoning after it has allowed Home Depot to put forth new legal theories and to raise new arguments based on newly developed or preexisting evidence. It should also consider Home Depot's arguments that prior rulings in the MDL should not be followed.

IV.

Complex multidistrict cases like this one demand much from transferee courts. The MDL process requires a judge to move hundreds or thousands of cases towards resolution while respecting each litigant's individual rights. Managing an MDL

17

may be "fundamentally . . . no different from managing any other case." U.S. Judicial Panel on Multidistrict Litig. & Fed. Judicial Ctr., Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Judges 3 (2d ed. 2014). But the complexity of most MDLs makes it harder to safeguard the procedural values which underlie all cases while simultaneously pursuing an efficient resolution on the merits.

MDL judges have risen to this challenge by devising efficient, effective, and fair case management techniques. Nothing in our opinion should be taken to disparage the "creativity and innovation" which is so "highly prized among MDL judges." Abbe R. Gluck & Elizabeth Chamblee Burch, *MDL Revolution*, 96 N.Y.U. L. Rev. 1, 58 (2021). Nor should we be taken to mandate rigid adherence to stultifying procedures or "arid ritual[s] of meaningless form." *Staub v. City of Baxley*, 355 U.S. 313, 320 (1958). We endorse the considerable authority which is vested in MDL transferee courts to efficiently and fairly manage complex cases.

In this case, the District Court tried to protect one of our legal system's central values—finality. It recognized the "vital interest" in protecting "judicial determinations that were the products of costly litigation and careful deliberation." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 254-55 (3d Cir. 2006). It accordingly tried to protect "the many rulings that [it] ha[d] made over the prior ten years of this litigation." *Home Depot*, 2021 WL 3728912, at *13. Lafarge similarly appeals to values of "judicial economy," Lafarge Br. 17, and objects to the idea that "MDL courts cannot even consider or refer to their own prior rulings in deciding later motions," *id.* at 20 (emphasis omitted).

18

On the facts here, we disagree with the trial court's use of the doctrines of law of the case and issue preclusion. But we understand that preserving the finality of past rulings is essential "to secure the peace and repose of society," "for the aid of judicial tribunals would not be invoked for the vindication of rights" if "conclusiveness did not attend" their judgments. *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 49 (1897). And the District Court has called for appellate guidance on applying these principles in this MDL proceeding. *See Home Depot*, 2021 WL 5177742, at *4-5. As such, we discuss two aspects of finality—judicial economy and fairness to litigants—and identify proper methods of vindicating these values.

## A.

The first value at stake is judicial economy. The trial court and Lafarge have both emphasized the importance of ensuring that transferee judges remain able to "maximize" the "judicial economy" that MDLs "were designed" to further. *Id.* at *5; *see also* Lafarge Br. 20. An MDL transferee court has a variety of options at its disposal to avoid the needless duplication of work across the cases that make up the proceeding. We detail several possibilities.

First, a court may rely on its prior decisions as persuasive, and demand good reasons to change its mind.[6] Both

---

[6] In MDLs, like in other litigation, a district court may apply prior rulings to new cases if a party presents no new facts, evidence, or arguments to warrant a departure. For example, suppose that in this case Dr. Kneuper had previously been offered as an expert in the class action, and suppose that the

parties here agree that this procedure is appropriate. *See* Oral Arg. Tr. at 9:20-25, 10:1, 28:3-17.

A judge may formalize this process through the use of case management orders.[7] This practice is regularly employed in MDLs—a judge may enter an order with respect to one party and then provide that it will be automatically extended to other parties if they do not come forward and show cause why it should not be applicable. *See, e.g.*, Order of Jan. 24, 2018, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-1570, at 2 (S.D.N.Y. Jan. 24, 2018) ("Any order entered into, or decision rendered, in this MDL that relates to all actions shall apply to all Tag-Along Actions without the need for separate motions and orders, unless counsel in a Tag-Along Action show good cause why the order should not apply to that Tag-Along Action."); Order to Show Cause as to the B3 Claims Against the Clean-Up Responder Defendants, *In re Oil Spill by the Oil Rig Deepwater Horizon*, No. 10-MD-2179 (E.D. La. Jan. 7, 2016) (similar); Order No. 50, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-02543, at 8 (S.D.N.Y. Apr. 24, 2015) (implementing a show-cause procedure for applying rulings made on the basis of consolidated pleadings to non-consolidated actions).

---

Court had excluded his testimony for permissible reasons. It would be appropriate for it to adhere to that decision in Home Depot's case if Home Depot could not present a sufficient reason why it should not be followed.

[7] For example, courts often "require plaintiffs to produce threshold *prima facie* support for their claims, such as expert reports and medical records." *Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 178 (3d Cir. 2021).

This is a technique that we have approved. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 240-41, 247-49 (3d Cir. 2013) (affirming dismissal of claims for failing to produce diagnostic information as required by a case management order). Just last year, we said:

> In an MDL case, management orders are essential tools in helping the court weed out non-meritorious or factually distinct claims. Accordingly, an MDL court needs to have broad discretion to keep the parts in line by entering *Lone Pine* orders that drive disposition on the merits. Such orders may impose preliminary discovery requirements, like the production of relevant expert reports, or may require plaintiffs to furnish specific evidence like proof of a medical diagnosis, with the goal of winnowing non-compliant cases from the MDL. That said, efficiency must not be achieved at the expense of preventing meritorious claims from going forward.

*Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 178 (3d Cir. 2021) (cleaned up).

Even without such an order, parties will be unlikely to relitigate issues on which the judge has already ruled without a compelling reason. "New parties will figure out quickly which efforts to litigate issues already decided by the judge at the urging of others will be futile." Joan Steinman, *Law of the*

21

*Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. Pa. L. Rev. 595, 669 (1987); *see also* Eldon E. Fallon, Jeremy T. Grabill, and Robert Pitard Wynne, *Bellwether Trials in Multidistrict Litigation*, 82 Tulane L. Rev. 2323, 2338 & n.73 (2008).

A transferee judge may also make use of consolidated complaints to simplify the litigation.[8] *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 852 F.3d 268, 302 n.171 (3d Cir. 2017). The Manual for Complex Litigation provides an order that a court may easily use to direct the plaintiffs to file such a complaint. Manual for Complex Litigation (Fourth), § 40.21, at 737 ("To pursue class action treatment, plaintiffs must file by [date], a single, consolidated, special master amended complaint."); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 421 (3d Cir. 2016) ("The Court also ordered plaintiffs to submit a Master Administrative Long-Form Complaint . . . to supersede the numerous then-pending complaints."). In the same vein, guidance provided to judges by the Judicial Panel on Multidistrict Litigation and the Federal Judicial Center emphasizes the value of grouping related cases. *See* Catherine R. Borden, Fed. Jud. Ctr., Managing Related Proposed Class Actions in Multidistrict Litigation 3-5 (2018). Plaintiffs may be grouped in any number of ways, including "by the nature of the claims brought," by "substantive state-law differences," by geography, by the "time of filing," by "which subset of

---

[8] Rulings made in connection with a consolidated complaint are law of the case for all parties named in that complaint. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 489 (7th Cir. 2020) (citing *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 588 (6th Cir. 2013)).

defendants is being sued," or even "whether they have opted out of arbitration or not." *Id.* at 4-5. We commend the creativity of transferee judges in devising these groups and other methods to manage litigation—bounded, of course, by the Federal Rules and the Constitution.

## B.

The second value at stake is fairness to litigants. The District Court was concerned by the possibility of late-arriving plaintiffs free-riding on the work of their predecessors. *See Home Depot*, 2021 WL 3728912, at *15. In its certification order, the Court noted the "need for additional guidance from appellate courts" on the treatment of "tag-along parties who first opted out of a class as to one defendant, but who later joined the MDL . . . ." *Home Depot*, 2021 WL 5177742, at *4. This is a distinct problem from the one discussed above and calls for different resolutions.

A court may avoid unfairness through the use of appropriate discovery management orders. We do not prescribe any "single, undifferentiated approach," but endorse wide "latitude" for "judicial oversight . . . to manage the availability of discovery obtained in one case for use in another. . . ." Am. L. Inst., Principles of the Law of Aggregate Litigation § 2.07, cmt. g (2010); *see also In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 659 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2009) ("We see no reason why the parties in subsequent actions, subject to the same conditions as those imposed on parties to the MDL, should not be able to avail themselves of the documents and depositions accumulated [in the MDL].").

The judge might also deal with monetary aspects of the problem by assessing common benefit fees. In multidistrict cases, "it is standard practice for courts to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds." *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006); *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128-30 (2d Cir. 2010) (Kaplan, J., concurring) (approving this order). We have upheld the use of such fees in situations where an attorney "confer[s] a substantial benefit to members of an ascertainable class." *In re Diet Drugs*, 582 F.3d 524, 546 (3d Cir. 2009). The American Law Institute endorses the use of common benefit fees to compensate lawyers for work they do on behalf of others. *See* Principles of the Law of Aggregate Litigation § 2.07, cmt. G (recommending that the use of discovery obtained by class counsel be compensated by "order of the class-action court to sequester a portion of any recovery obtained by the exiting claimant to account for the benefit obtained from the class discovery"); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653-54, 661-62 (E.D. Pa. 2003) (making such an order).

No particular approach will be suitable in every case. We describe these options as examples of alternatives that may be available. A district court charged with the responsibility of achieving this goal across "the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006).

\*\*\*

Following remand, the District Court should reconsider the admissibility of Dr. Kneuper's testimony without reference to issue preclusion and law of the case. It should allow Home Depot to make new arguments based on new or preexisting evidence, and it should consider Home Depot's arguments that rulings in other cases in this MDL should not be followed, as more fully described in Part III of our opinion.

We VACATE the judgment of the District Court and REMAND for further proceedings consistent with this opinion.