**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2062
_____


GEA MECHANICAL EQUIPMENT US, INC.,
Appellant

v.

FIRST STATE INSURANCE COMPANY; HARTFORD ACCIDENT AND
INDEMNITY COMPANY; HARTFORD FIRE INSURANCE COMPANY;
WELLFLEET NEW YORK INSURANCE COMPANY As successor to Atlanta
International Insurance Company; CONTINENTAL INSURANCE COMPANY;
FEDERAL INSURANCE COMPANY; TRAVELERS CASUALTY AND SURETY
COMPANY Successor to Aetna Casualty and Surety Company; XYZ Insurance
Companies


_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-20-cv-09741)
District Judge: Honorable Brian R. Martinotti
_____


Submitted Under Third Circuit L.A.R. 34.1(a)
on June 25, 2024

Before: KRAUSE, RESTREPO, and MATEY, *Circuit Judges*

(Filed: August 9, 2024)

KRAUSE, *Circuit Judge*.

Appellant GEA Mechanical Equipment US, Inc., contends that the District Court misapplied New Jersey law when it granted summary judgment to GEA's liability insurers. As we agree, we will vacate the District Court's summary judgment order and remand this case for further proceedings.

## I.    BACKGROUND

This insurance-coverage suit stems from a personal-injury action filed by Charles and Constance Thornton in 2017.[1] Although the Thorntons offered to settle with GEA for a certain amount, they walked away from the negotiating table after GEA's "paltry" counteroffer. Answering Br. 10. The case proceeded to trial, resulting in a "runaway" $70.1 million verdict, and the parties ultimately settled for a sum far larger than the Thorntons' initial offer. Opening Br. 9.

In August 2019—nearly two months after the jury verdict, but before the final settlement—GEA initiated a coverage action against its primary and excess liability insurers in New Jersey state court. After removal, both parties moved for summary judgment; relevant here, the insurers sought to disclaim their coverage obligations based

---

\* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

[1] The Thorntons alleged that Charles "suffered bodily injury as a result of . . . exposure to asbestos-containing brakes and clutches contained in centrifuges or separators" sold by GEA's predecessor to his employer. App. 91–92.

on a late-notice defense.[2]  As it turns out, GEA began notifying its insurers of the

Thornton action just one day before filing the coverage suit.

The District Court granted summary judgment to the insurers, finding

indemnification barred by the late-notice doctrine.  GEA filed this timely appeal.

## II.    DISCUSSION[3]

Under New Jersey law, an insurer seeking to disclaim coverage based on late

notice must show (1) a breach of the insurance contract's notice provision, and (2) a

"likelihood of appreciable prejudice" resulting from the breach.  *Cooper v. Gov't Emps.*

*Ins. Co.*, 237 A.2d 870, 874 (N.J. 1968).[4]  Appreciable prejudice, in turn, requires two

showings: one that "substantial rights have been irretrievably lost," and one that the

insurer would have had a "likelihood of success . . . in defending against the accident

victim's claim."  *Morales v. Nat'l Grange Mut. Ins. Co.*, 423 A.2d 325, 329–30 (N.J.

---

[2] The primary liability policies required GEA to "immediately forward to [the insurers] every demand, notice, summons or other process received" in the event of a claim or suit. App. 736.  Similarly, the excess policies required, as a condition precedent to coverage, notice of an occurrence, claim, or legal proceeding "as soon as practicable" when the policies were "reasonably likely" to be implicated.  *See, e.g.*, *id.* at 648.

[3] The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1), and we have jurisdiction under 28 U.S.C. § 1291.  To the extent removal carried forward any XYZ defendants, these unnamed and unserved parties do not affect finality, and we will dismiss them to preserve complete diversity.  *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 39 n.1 (3d Cir. 1988); *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 494 (3d Cir. 2006).  Our review of the District Court's summary judgment decision is plenary, and we "will uphold a grant (or reverse a denial) of summary judgment only when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law." *Transportes Ferreos de Venez. II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001).

[4] Breach alone is insufficient because New Jersey public policy favors coverage for the insured.  *See Cooper*, 237 A.2d at 873–74.  The parties agree that the relevant insurance contracts exist, apply, and are governed by New Jersey law.

Super. Ct. Law Div. 1980); *see Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 996–97 (3d Cir. 1996) (endorsing the *Morales* test).[5]

In its summary judgment decision, the District Court held that (1) GEA breached the notice provisions of its primary and excess policies, and (2) the insurers were "appreciably prejudiced . . . as a matter of law" because they were "deprived completely of any opportunity to participate in the defense of the Thornton Action until after a verdict and judgment was entered." *GEA Mech. Equip. US, Inc. v. First State Ins. Co.*, No. 22-cv-09741, 2023 WL 4052954, at *4–7 (D.N.J. June 16, 2023). To reach that second conclusion,[6] it appears the District Court may have conflated the two prongs of *Morales*. Below, we clarify the nature of the appreciable prejudice test and the proper application of that test to this case.

---

[5] Some New Jersey courts have held that, at least in certain scenarios, one showing is sufficient to establish appreciable prejudice. *See KnightBrook Ins. Co. v. Tandazo-Calopina*, 275 A.3d 474, 480 (N.J. Super. Ct. App. Div. 2022) (narrow definition of substantial rights); *Hager v. Gonsalves*, 942 A.2d 160, 161, 164–66 (N.J. Super. Ct. App. Div. 2008) (cooperation provision with third-party claimant). Our precedent requires both showings, however, and we will abide by that precedent unless and until the New Jersey Supreme Court states otherwise. *Chem. Leaman*, 89 F.3d at 996–97; *Trs. of the Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 898–99 (3d Cir. 1987); *accord, e.g.*, *Sagendorf v. Selective Ins. Co. of Am.*, 679 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1996).

[6] Although GEA claims it did not breach the excess policies' notice provisions, we need not address that argument at this juncture. On remand, and with the benefit of the correct appreciable prejudice standard, the District Court will have another opportunity to examine (1) whether breach is necessary to the late-notice analysis, and (2) if so, whether a breach or breaches occurred. In conducting that examination, the District Court is reminded to draw all inferences in favor of GEA and to keep in mind that the insurers bear the burden of persuasion on this point. *See J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 925 (3d Cir. 2011); *Cooper*, 237 A.2d at 874.

## A.    The Appreciable Prejudice Test[7]

The District Court found appreciable prejudice beyond "reasonable dispute" because, given GEA's post-verdict notice, the insurers were "irreversibly deprived of any meaningful participation in [the] case." *GEA*, 2023 WL 4052954, at *7. Consistent with that conclusion, the Court did not assess whether the insurers would have been successful "in defending against the [Thorntons'] claim." *Morales*, 423 A.2d at 330. This was error.

We have long held that the "right to associate in the defense of [a] claim is too amorphous and cannot . . . constitute [appreciable] prejudice" without a simultaneous showing that "earlier notice would probably have led to a more advantageous [substantive] result." *See Trs. of the Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 898–99 (3d Cir. 1987) (quotation marks omitted) (applying *Morales* to a similar Pennsylvania law). Yet the District Court ignored that holding, finding appreciable

---

[7] As a threshold matter, a showing of appreciable prejudice is indeed required in a case like this. True, as the District Court observed, the New Jersey Supreme Court wrote in *Gazis v. Miller* that "not . . . every notice provision in an insurance setting can be discarded in favor of an appreciable prejudice requirement." 892 A.2d 1277, 1282 (N.J. 2006) (quotation marks omitted). But the *Gazis* Court was speaking to claims-made policies, not occurrence-based ones, *id.* at 1280–82, and we have no reason to believe New Jersey courts would ignore appreciable prejudice for the occurrence-based policies at issue here, *see Chem. Leaman*, 89 F.3d at 996. The insurers suggest that, regardless of *Gazis*, a showing of appreciable prejudice is not required because GEA acted in bad faith. That is incorrect: The cases cited by the insurers discuss cooperation provisions, not notice provisions, and are thus inapposite. *See, e.g.*, *Solvents Recovery Serv. of New Eng. v. Midland Ins. Co.*, 526 A.2d 1112, 1114–15 (N.J. Super. Ct. App. Div. 1987). In any event, the parties dispute whether GEA acted in good faith here.

prejudiced based solely on the insurers' lost opportunity to defend.[8] Put simply, appreciable prejudice requires both (1) the irretrievable loss of substantial rights, and (2) a likelihood of success in the underlying defense, *Morales*, 423 A.2d at 329–30; *Chem. Leaman*, 89 F.3d at 996–97; *see supra* note 5, and the District Court erred when it considered only the first.

### B.    Appreciable Prejudice in This Case

We agree with the District Court that substantial rights were irretrievably lost in this case. While the District Court focused on prejudice rather than irretrievable loss,[9] it seems to us that at least some rights held by the insurers—including the right to participate in settlement discussions, which have now concluded—were lost due to late notice and cannot be recovered.[10]

---

[8] The District Court found GEA's late notice sufficient for appreciable prejudice in part because no New Jersey decision has "refus[ed] to find appreciable prejudice where notice was provided after the entry of a verdict, judgment, or settlement." *GEA*, 2023 WL 4052954, at *7. While the parties dispute this assertion, we need not determine its accuracy here. Even if New Jersey courts have always found appreciable prejudice when notice comes as late as GEA's, that does not negate the second prong of the governing two-prong test.

[9] The *Morales* court observed that prejudice follows from "notice . . . after the entry of judgment," but went on to explain that the extent to which the insurer's rights "have been irretrievably destroyed" in that scenario "is quite another question." 423 A.2d at 329–30. As it explained, it is not enough to find the insurer "has lost the opportunity . . . to depose parties and others, to appear at trial and cross-examine witnesses, and to present evidence," because "[i]t might well be that witnesses are presently available and that the circumstances surrounding the accident can be reconstructed," in effect allowing for an assessment of insurer liability even after notice. *See id.* The District Court did not consider whether "witnesses are presently available [or] . . . the circumstances surrounding the accident can be reconstructed," *id.* at 330, and it may wish to do so on remand.

[10] The parties disagree on which rights are relevant to the first *Morales* prong. According to GEA, the prong covers only coverage-determination rights and does not extend to

6

As to whether the insurers could have succeeded in defending against the Thornton action, the record is less clear. We read "likelihood of success . . . in defending against [an] accident victim's claim" to encompass likelihood of success in settling an accident victim's claim, *Morales*, 423 A.2d at 330; *see Chem. Leaman*, 89 F.3d at 996–97; *Am. Centennial Ins. Co. v. Warner-Lambert Co.*, 681 A.2d 1241, 1246 n.2 (N.J. Super. Ct. Law Div. 1995), and we note that "an insurer [may] show . . . that [it] could have settled the underlying case for a small sum or smaller sum than that for which the insured ultimately settled the claim" to satisfy *Morales* prong two, *see* Jordan R. Plitt, Steven Plitt, Daniel Maldonado & Joshua D. Rogers, 13A Couch on Insurance § 193:29 (West 2024). But the District Court did not consider whether the insurers could have obtained a better settlement, and the parties view the facts on this point very differently.

Regarding pretrial settlement, the insurers suggest they could have leveraged "databases containing settlement and verdict data as to tens of thousands of prior . . . claims" to prepare a "more respectable [initial] counteroffer" and make "further attempts at settlement throughout the litigation." Answering Br. 15 (quotation marks omitted). GEA, meanwhile, argues that no record evidence suggests "a reasonable pre-trial

---

claims-handling rights. *See KnightBrook*, 275 A.3d at 480–81. The insurers, for their part, argue that the prong must be broader, and that *KnightBrook* (on which GEA relies) is either distinguishable or erroneous. Given our adoption of *Morales*, we believe the broader reading is appropriate: All rights "pertaining to a defense against the claim" are relevant to prong one. *See Morales*, 423 A.2d at 329; *Chem. Leaman*, 89 F.3d at 996–97. We note, however, that both coverage-determination and claims-handling rights appear to have been irretrievably lost here.

settlement was possible at an amount the Insurers . . . would have paid."[11]  Opening Br. 15.  And to the extent a smaller verdict could have lowered (or rendered unnecessary) the ultimate settlement, the parties dispute whether the insurers "would have become involved [at trial] to achieve a better result" given their actions in similar cases.[12]  *Id.*

Because the District Court did not consider the second prong of the *Morales* test, and because "likelihood of success . . . in defending against the [underlying] claim" is a contested issue, we will remand to the District Court to address that issue under the appropriate legal standard in the first instance.  *See Morales*, 423 A.2d at 330; *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 64 (3d Cir. 2023) ("[W]e are a court of review, not first view . . . .").

## III.    CONCLUSION

For the foregoing reasons, we will vacate the order of the District Court and remand for further proceedings.  We also will dismiss GEA's claims against any remaining XYZ defendants without prejudice.

---

[11] The insurers, in other words, could have responded to the Thorntons with a higher initial counteroffer than GEA's.  But in GEA's view, this would not have changed the outcome: The insurers "neither claimed nor produced any evidence that they would have offered anything close" to the Thorntons' initial demand, and the insurers' own expert admitted the Thorntons may have had "no intention to settle."  Opening Br. 14–15.  As to later settlement offers, GEA notes that the insurers do not "claim they would have made . . . offers greater than the highest pre-verdict offer that GEA . . . actually made and which the Thorntons did not accept."  *Id.*  Viewed in the light most favorable to GEA, *see Blue Mountain*, 650 F.3d at 925, these points may lead to a different result than the District Court originally reached.

[12] Despite its importance, the parties do not discuss whether the insurers *could* have achieved a better trial result (or a finding of no liability) had they become involved.  The District Court also did not weigh in on this issue.