**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2839
_____

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS
CONCUSSION INJURY LITIGATION

Goldberg, Persky & White, P.C.,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:12-md-02323)
District Judge: Honorable Anita B. Brody
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on July 7, 2025

Before: RESTREPO, BIBAS, and CHUNG, *Circuit Judges*

(Filed: August 27, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*

A law firm filed a charging lien asserting it was entitled to fees for its efforts in representing a retired player in the NFL concussion injury litigation. Applying Pennsylvania lien law, the court-appointed special master recommended the firm receive only its reasonably incurred costs but no slice of the fee. The District Court adopted the recommendation, and because it did not abuse its discretion in doing so, we will affirm.

**I.**

In 2011, a retired NFL player (Player) retained Goldberg, Persky & White, P.C. (Goldberg) to represent him in his suit against the NFL for damages connected to head injuries from his professional playing career. All concussion-related lawsuits against the NFL were consolidated in a multidistrict litigation (MDL) in the Eastern District of Pennsylvania. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 421 (3d Cir. 2016). After years of negotiations, the cases settled for nearly $1 billion. *Id.* at 447.

The administration of this settlement is complex, so most players individually retain counsel to assist with obtaining an award. Goldberg registered Player to receive an award in 2017, but his initial neurological tests did not reveal a qualifying impairment. In March 2022, the District Court approved an agreement eliminating race-based norming in the settlement program and establishing a new scoring method for the neurological tests. Under this agreement, Player qualified for expanded testing and could have his initial neurological tests rescored under the new method. Goldberg scheduled an appointment for Player, but after the expanded testing, he again failed to qualify for an award.

2

By March 2023, Player grew frustrated with Goldberg and felt "abandoned" and "neglected." *In re Nat'l Football League Players Concussion Inj. Litig.*, No. 2:12-md-02323-AB, 2024 WL 2012241, at *4 (E.D. Pa. Apr. 29, 2024) [hereinafter *R&R*], *report and recommendation adopted*, No. 2:12-md-02323-AB, 2024 WL 4281447 (E.D. Pa. Sept. 5, 2024). He fired Goldberg and hired J.R. Wyatt Law (Wyatt), one of the law firms that spearheaded the 2022 agreement that changed the testing and scoring protocol. The switch proved to be a gamechanger as Wyatt zipped into action. The law firm had Player's 2017 neurological results rescored under the new method. Those updated scores revealed a qualifying impairment, so Wyatt promptly submitted a claim on Player's behalf. Within a month of the rescoring, the claims administrator approved a $196,101 award for Player. Wyatt is set to receive about $43,000 in legal fees for its work in securing the award. *R&R* at *1.

Days after its firing, Goldberg filed a charging lien, also known as an attorney lien, against any future award to Player based on the efforts it provided from October 2011 to March 2023. As described by Goldberg, those efforts amounted to 55.7 hours of work over twelve years and just over $3,000 in costs incurred. Most of the listed time (29.3 hours) is undated, and Goldberg's descriptions make much of it appear to be pre-settlement. Just over five hours reflect work on this lien, and an unknown number of hours were spent on "poaching issues." *R&R* at *3 n.12.

Anticipating fights over fees related to the settlement program, the District Court early on adopted a set of rules and referred to a magistrate judge all fee petitions filed by individually retained counsel. *See In re Nat'l Football League Players' Concussion Inj.*

3

*Litig.,* 826 F.App'x 136, 138 (3d Cir. 2020). Two years ago, that magistrate judge retired, and the District Court appointed a special master to take his place. The special master authored a new set of rules, which the District Court approved. In this dispute, the special master applied a different approach from the one applied by the magistrate judge to similar disputes. Under this new approach, he recommended the District Court apply Pennsylvania charging lien law and find that Wyatt should receive the full contingency fee, and that Goldberg should receive only its reasonably incurred costs.[1] The District Court issued an order adopting that recommendation while noting that other circumstances might still justify dividing the fee. Goldberg appeals that order. We review the order adopting the recommendation for abuse of discretion. *See In re NFL Players' Concussion Inj. Litig.*, 962 F.3d 94, 101 (3d Cir. 2020).

## II.[2]

Goldberg objects to the special master's new approach to lien disputes and his application of that approach here. Because both are sensible and legally sound, we hold that the District Court did not abuse its discretion in adopting the recommendation.

### A. The special master's new approach to charging lien disputes.

A district court may assess the reasonableness of contingency fees in class action lawsuits and MDLs. *See Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1114 (3d Cir. 1979).

---

[1] If the District Court rejected that recommendation because it preferred the prior approach to lien adjudication, the special master recommended the following fee split: 85 percent to Wyatt and 15 percent to Goldberg.

[2] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

In this MDL, the District Court capped the contingency fees earned by individually re-tained counsel like Goldberg and Wyatt at 22 percent. *In re Nat'l Football League Play-ers' Concussion Inj. Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1658808, at *1 (E.D. Pa. Apr. 5, 2018). In doing so, it applied the so-called *McKenzie* framework for analyzing the reasonableness of contingency fees. The *McKenzie* framework calls for considera-tion, among other things, of the "circumstances existing at the time the arrangement is en-tered into, . . . the quality of the work performed, the results obtained, and whether the at-torney's efforts substantially contributed to the result." *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43, 45 (3d Cir. 1987). Following the District Court's lead, the magis-trate judge then applied the *McKenzie* framework to all disputes relating to the contin-gency fees—including twenty-six lien disputes between current and former individually retained attorneys over dividing the contingency fee.

In his recommendation, the special master departed from this approach. After ask-ing for supplemental briefing from the parties on what substantive law should apply, he determined that the more legally sound approach was to apply state substantive law to disputes turning on the recognition of charging liens—that is, equitable claims by former attorneys who no longer represented a player when he received an award. So in resolving the Goldberg's charging lien claim, he applied state substantive law, rather than the fed-eral *McKenzie* standard:

> Goldberg had a contingency fee contract with the Player. That contract creates no post-termination payment rights. So, Goldberg's entitlement to be paid now must rest on an unjust enrichment cause of action, or a statute which would (in some

5

states) create an equivalent charging lien. Whether there's merit to such an equitable claim is quintessentially a question of state law. Goldberg admits as much in its briefing when it states that it seeks to vindicate a '*quantum meruit*' right.

R&R at *10. This approach is legally sound because, as the special master noted, there is "no free-floating federal right to a charging lien." *Id.* at *11. If Goldberg is entitled to a portion of Player's award, the special master concluded that "state law must be at [the] root" of its equitable claim. *Id.* We see no issue with the District Court exercising its wise discretion to approve of this approach.

**B. The law-of-the-case doctrine does not bar the District Court from adopting the new approach because each lien dispute is a distinct action.**

Goldberg questions this departure, contending the special master erred in not applying the *McKenzie*-based framework. Invoking the law-of-the-case doctrine, Goldberg argues the magistrate judge's use of the *McKenzie* framework in the previous charging lien disputes should have precedential effect within the settlement program. And if the special master had applied the *McKenzie* framework, Goldberg contends it would be entitled to some part of Wyatt's contingency fee.

But the law-of-the-case doctrine forecloses only "reconsideration of legal issues already decided in earlier stages of a case." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023) (internal quotations omitted). And it applies only in "the same case" and only to issues already "expressly" or "necessarily resolved" in that case. *Id.* (internal quotations omitted). The doctrine "cannot be applied across distinct actions in [a] multidistrict proceeding." *Id.* Simply put, each lien dispute arising from this MDL settlement is a distinct action, so the law-of-the-case doctrine does not apply.

6

**C. Goldberg failed to show the outcome would be any different under New York law.**

Goldberg next contends—in a single paragraph of its brief—that the special master erred in applying Pennsylvania law and should have applied New York law instead. Here again, the special master's reasoning is sound, and it was within the District Court's discretion to adopt it. If the parties dispute the substantive law that should apply to a state-law claim, federal courts must apply the conflict of law rules of the forum state to determine which state's substantive law should govern. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). We have held that the Pennsylvania Supreme Court would apply the principles of *Griffith v. United Air Lines Inc.*, 203 A.2d 796 (Pa. 1964), to conflict of laws questions in contract cases. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 228 (3d Cir. 2007). The first step of the *Griffith* analysis is to determine whether there is a true conflict between the laws of each state that might apply. *Id.* at 229. Without an actual conflict, no further choice-of-law analysis is needed, and the court applies the law of the forum state. *See id.*

In its briefs before the special master, Goldberg agreed that under a *Griffith* analysis, Pennsylvania law would apply. Yet it also suggested that New York law should apply per a clause in the settlement agreement. Because Goldberg neither explained why the clause applied to this dispute nor identified an actual conflict between Pennsylvania and New York law, the special master applied Pennsylvania lien law. On appeal, Goldberg abandons its concession that Pennsylvania law applies under a *Griffith* analysis and

7

makes only a cursory argument that the settlement's choice-of-law clause governs (presumably, despite *Griffith*). But Goldberg again provides no factual or legal support, arguing in conclusory fashion only that this dispute "aris[es] under" the agreement "which requires adherence to New York law." Appellant's Br. at 14. Nor does it describe New York lien law or explain how applying it would change the outcome.

The special master declined to find a conflict because Goldberg failed to plausibly show one existed or that it would make a difference. The District Court adopted that recommendation as a proper exercise of its equitable authority to implement the settlement agreement. Goldberg's one-paragraph ipse dixit before this Court fails to persuade us that the District Court relied on an errant conclusion in applying Pennsylvania substantive law.

## D. The District Court did not abuse its discretion in adopting the special master's recommendation, which reasonably applied Pennsylvania lien law.

Goldberg's final argument is that the special master failed to properly apply Pennsylvania lien law to the facts before him. As the special master stated, before an equitable charging lien is recognized and applied in Pennsylvania, prior counsel must satisfy the five-part threshold inquiry set out in *Recht v. Urban Redevelopment Authority of the City of Clairton*, 168 A.2d 134 (Pa. 1961), by establishing:

> (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney *operated substantially or primarily* to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations

8

> which necessitate the recognition and application of the charging lien.

*Id.* at 138–39 (emphasis added). After reviewing post-*Recht* Pennsylvania case law developments, the special master reasonably found that the Pennsylvania Supreme Court would apply *Recht*, with an emphasis on the second causation factor, to determine whether Goldberg held an enforceable charging lien.

The special master explained that the "fund" here is Player's individual award, so only work that led directly to that award should be considered. Though he acknowledged Goldberg's efforts in registering Player for the settlement program and arranging for two neurological evaluations, the special master found that Goldberg's work did not "operate[] substantially or primarily to secure" the award. *Id.* at 139. It was Wyatt's expedience—in re-scoring the 2017 test results, in scheduling a new exam with those results in hand, and in preparing and submitting the successful claim—that provided "the engine of recovery." *R&R* at *19. Relying on the equitable considerations of *Recht*'s fifth factor, however, the special master recommended finding Goldberg was entitled to a limited charging lien for its costs incurred in the representation.

Goldberg challenges the special master's *Recht* analysis and focuses its argument on the fifth factor. It urges that the special master ignored the important work it performed: (1) as an early mover in the NFL concussion litigation, (2) as class counsel once the cases were consolidated, and (3) as Player's attorney in the initial stages of the claim process. Appellant's Br. at 15–17. But the first two categories of work did not "operate[] substantially or primarily" to secure this specific award. *Recht*, 168 A.2d at 139. And

the special master's recommendation did recognize the third, finding it would be unjust to leave Goldberg without a limited charging lien for the reasonable value of its time and costs "tightly linked" to the award. *R&R* at \*21. However, because the precise hours that Goldberg spent that could be substantially or primarily attributed to the award were de minimis, Goldberg only received its costs incurred.

Goldberg merely disputes the special master's reasonable conclusions rather than point to any legal or factual error in his analysis. Thus, its final argument meets the same fate as its first two. In the end, Goldberg fails to show the District Court abused its discretion in adopting the special master's recommendation.

## III.

For the reasons above, we will affirm the District Court's order.